◼ WILFREDO DOMINGUEZ, an Infant, by His Mother and Natural Guardian, SANTO PEREZ, et al., Respondents, v MANHATTAN AND BRONX SURFACE TRANSIT OPERATING AUTHORITY, Appellant.—Intermediate judgment, Supreme Court, Bronx County, entered May 5, 1977, determining the issue of liability in favor of the infant plaintiff against the defendant and directing a trial of damages, reversed, on the law, vacated, and complaint dismissed, without costs and without disbursements. On defendant's motion to dismiss for failure to state a prima facie case, the infant plaintiff was entitled to have the proof read in a light most favorable to him. The motion should have been granted if there was no rational process by which the jury could have found for the plaintiff *(Calvaruso v Our Lady of Peace R. C. Church,* 36 AD2d 755). With these criteria in mind, the operative facts will be synopsized below. At about 6:00 P.M. on May 15, 1975, the plaintiff, then 11 years old, and two young friends "hitched" a ride on a bus in the West Farms section of The Bronx. The plaintiff positioned himself on the right rear of the bus between the door and wheels. One friend stood very near the rear door; the other friend stood on the rear portion of the bus. Within one minute after the bus had begun its route, it was "cut off" by a gypsy cab and the bus driver was forced to make a "sharper" right hand turn than was normally made at that intersection. As a result of this very "sharp" turn, the right side of the bus brushed against an el support pillar and the plaintiff was caused to be thrown from the bus by that impact. Both the plaintiff and a female passenger testified that they had looked in an interior mirror and had seen the driver looking in their direction. The passenger, seated on the right side of the bus close to the infant plaintiff, also stated

that the three hitchhikers were noisy. At one point, she asked the plaintiff to step down from the bus but he did not comply with her request. The bus driver averred that he did not see the infant plaintiff or his associates. He further stated that his vision was focused to the front and left in the busy intersection. On the foregoing facts, the infant plaintiff sought to recover under the theory of "last clear chance" (see, generally, 41 NY Jur, Negligence, §§ 70-75). The trial court denied the defendant's motion to dismiss the complaint on the ground a prima facie case was made. Subsequently, the jury returned a five to one verdict in favor of the plaintiff. The controlling principles in this area of "last clear chance" are succinctly set forth in *Galanek v New York City Tr. Auth.* (53 AD2d 586, mot for lv to app den 40 NY2d 807) and they will not be repeated in this memorandum decision. The crucial issue presented to the trial court was whether the bus driver had actual knowledge that the plaintiff and his friends were hitchhiking at the time of the occurrence. We have already found that it is improper to conclude that a bus driver necessarily saw a hitchhiker because the hitchhiker saw the driver's eyes in a rearview mirror *(Feliciano v Manhattan & Bronx Surface Tr. Operating Auth.,* NYLJ, July 1, 1975, p 10, col 3, affd 53 AD2d 534). Likewise, in this proceeding, it would be quite unfair to assume that the driver saw the plaintiff or his friends during the very brief period of time the bus was in motion. It must also be emphasized that the bus was not equipped with a right exterior mirror. In addition, it must be stressed that the driver's plane of vision in the interior mirror above his head may very well have been obstructed by the female passenger who sat by the window immediately in front of the plaintiff. While there was evidence adduced that the three hitchhikers were "noisy", cognizance must be taken of the fact that their "noise" was made on the outside rear of the bus in a highly congested intersection. Again, it would be totally unreasonable to deduce that the driver discerned their "noise" from all the other noises in the area in a ride that covered no more than 60 yards. On the tenuous evidence thus presented, the jury could not rationally infer that the driver had actual knowledge of the hitchhikers' presence on his bus. Hence, the complaint must be dismissed. Concur—Murphy, P. J., Lupiano, Silverman and Markewich, JJ.; Sandler, J., dissents in a memorandum as follows: The central question presented on this appeal is whether the defendant's bus driver had "actual knowledge" that the 11-year-old plaintiff and companions were "hitching" a ride on the bus in time to avoid by reasonable action the accident that resulted in injuries to the plaintiff. Although the evidence is fairly set forth in the opinion of the court, certain aspects of it require in my view a somewhat different analysis. 1. The plaintiff and a companion testified that they, together with other boys who with them had sought to earn some money at a supermarket by performing various errands, attempted to secure a free ride on the defendant's bus. Plaintiff himself and another asked the driver if he would permit them to ride on the bus without payment, and the driver said that he would not. One or two boys attempted unsuccessfully to enter the bus from the rear door. From this testimony the jury could reasonably have concluded that the driver had been alerted more than would be usual to the events that thereafter occurred. Even more important, however, is the fact that the driver denied any memory of this episode. The jury could have reasonably found that this denial was untrue, that it was intentionally false and, in accordance with the familiar principle, part of every court charge, could have rejected as untrustworthy everything the driver said. This aspect of the evidence is not specifically addressed in the opinion of the court which, in its narrative of the events,

relies in part on testimony by the driver that the jury could properly have disbelieved. 2. Following denial of permission to enter the bus, the defendant and another friend ascended the outside of the bus while it was stationary at the "West Farms stop," the plaintiff placing himself on the right rear side, between the rear door and the rear right wheel, with at least one and perhaps both hands entering the bus through an open window. After the bus started to move, two other boys ran after it and jumped on to the rear. One of plaintiff's companions positioned on the rear of the bus banged the side with a hand. According to an adult passenger in the bus sitting a few feet from the plaintiff (one of only 10 passengers then in the bus) the boys were "very noisy." It is, of course, not easy to determine from the cold record the volume of noise that was generated. However, I am unable to see how the court can conclude as a matter of law that four boys, 11 years of age and thereabouts, making a racket on the outside of a bus, did not produce enough sound and commotion to communicate their presence to any driver not resolutely determined to be unaware of them. 3. The adult passenger referred to previously, seated a few feet from the plaintiff, testified that she warned the boys to get off the bus and thereafter saw the bus driver looking into the rear view mirror in her direction. At several intervals following her admonitory comments, and before the accident, she saw the driver look in her direction through his rear view mirror. The plaintiff himself testified that he saw the driver looking through the rear view mirror and that their eyes met. There are two points of obvious interest. First, in view of the contradictory testimony, the driver's denial that he looked into the rear view mirror during this period could once again have been evaluated by the jury as intentionally false and requiring rejection of every part of his testimony relevant to the appropriateness of his behavior. Indeed, the jury could reasonably have found in such a false denial a positive implication that the driver had in fact seen one or more of the boys. As to the court's conclusion that no value whatever can be attached to the testimony of the passenger and the plaintiff that the defendant was looking in their direction through the rear view mirror, and the testimony of the plaintiff that their eyes met, I am aware of no scientific principle or body of human experience that supports such an unqualified conclusion. Indeed, I would have thought that the common experience of many bus riders was emphatically to the contrary. The evidence here described is of course far stronger than that presented in *Feliciano v Manhattan & Bronx Surface Tr. Operating Auth.* (NYLJ, July 1, 1975, p 10, col 3, affd 53 AD2d 534 in which a finding of liability depended entirely on the controverted testimony of the plaintiff hitchhiker that his eyes met those of the driver looking at him through the rear view mirror. When the testimony is evaluated as a whole and appropriate consideration is given to the jury's right to conclude that the driver had falsely testified, and the inferences to be drawn from that finding, there appears to be more than adequate support for the jury's determination of liability. Accordingly, the intermediate judgment determining the issue of liability in favor of the plaintiff and directing a trial on damages, should be affirmed.