■ WILFREDO DOMINGUEZ, an Infant, by His Mother and Natural Guardian, SANTO PEREZ, et al., Respondents, v MANHATTAN AND BRONX SURFACE TRANSIT OPERATING AUTHORITY, Appellant.—This court (Sandler, J., dissenting) reversed an interlocutory judgment of the Supreme Court, Bronx County, entered May 5, 1977, and dismissed the complaint on the legal ground that the jury could not have rationally inferred that the driver had actual knowledge of the infant plaintiff's presence on the bus (62 AD2d 933). Thereafter, on March 27, 1979, the Court of Appeals reversed and found that "While this evidence was not overwhelming, it was sufficient to raise a question of fact for the jury as to whether the bus driver did notice Wilfredo in the few moments between his jumping onto the bus and the accident." (46 NY2d 528, 535.) This court now reverses the interlocutory judgment, on the facts, and grants a new trial, with costs to abide the event. The infant plaintiff testified that he only "hitched" on the bus after the bus was moving. He further testified that he was on the bus for 10 seconds before it collided with the pole. The infant plaintiff also averred that his other friends on the bus were not noisy. Eugene Ortiz, one of the infant plaintiff's companions, testified that he and another companion, Santos, had to run to catch up with the bus. Hence, whatever noise Ortiz and Santos made on the back of the bus occurred after they had caught up with the bus. Moreover,

whatever noise they made could have been easily drowned in the other noises found in this busy intersection. It is not totally clear from this record when a fourth companion, named Juan, "hitched" his ride on the bus. The passenger, Elcilia Alemar, confirmed that the infant plaintiff and his companions "hitched" on the bus after it was in motion. While Alemar did state that the boys were making noise on the outside rear of that bus, the intensity and duration of the noise is seriously suspect from the fact that the bus made a nonstop trip of approximately 60 yards in no more than 15 seconds. Although the infant plaintiff and Alemar testified that they had eye contact with the driver, it is very questionable whether the driver's attention was focused on them or on traffic. Indeed, the driver would have had to have extraordinary powers of perception and concentration to keep a vigilant lookout to the front and the rear simultaneously. Moreover, the driver testified, without contradiction, that he was cut off by a gypsy cab. Even if the driver came to the realization at some point that hitchhikers were on his bus, any remedial action on his part was hampered by the movement of the gypsy cab. In taking corrective action, it must be remembered that the driver's prime duty was to protect the safety of the passengers riding lawfully inside the bus. The preponderance of the evidence did not support the jury's conclusion that the driver actually knew of the infant plaintiff's presence on the side of the bus. Even if the driver did come to realize that the infant plaintiff was on the side of the bus, the finding that the driver had a "last clear chance" to avoid injury to the infant plaintiff was contrary to the weight of the evidence. Accordingly, we order a new trial in this matter. Concur—Murphy, P. J., Lupiano, Silverman and Markewich, JJ.

Sandler, J., dissents in a memorandum as follows: I dissent for the reasons previously set forth at length in my dissenting opinion on the original appeal (62 AD2d 933, 934) and on the basis of the factual analysis integral to the determination by the Court of Appeals of the legal question raised on the appeal from our decision. I disagree emphatically with the court's conclusion that the verdict was against the weight of the evidence. So far as it is possible to evaluate factual issues on the basis of a trial record, it is my opinion that the jury verdict was sound and supported at every point by the clear weight of the credible evidence. I continue to be perplexed by the court's reliance upon statements by the driver, whose testimony at essential points was directly contradicted by other witnesses and whom the jury had every right, as part of its fact-finding function, to regard as a wholly untrustworthy witness.